IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD CARRASCO,<br><br>   Plaintiff,<br>v.<br><br>OFFICER CAMPAGNA & OFFICER HOLGUIN,<br><br>   Defendants. | No. C 03-4727 SBA (pr)<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REFERRING CASE TO MAGISTRATE JUDGE FOR SETTLEMENT PROCEEDINGS**<br><br>(Docket no. 11) |

## I. INTRODUCTION

Plaintiff, a state prisoner, filed a pro se civil rights complaint under 42 U.S.C. § 1983, alleging he was subjected to excessive force by Officers Campagna and Holguin (hereinafter "Defendants") on October 15, 2002, while incarcerated at the Main Jail (hereinafter "Main Jail") of the Santa Clara County Department of Corrections (hereinafter "DOC").  Before the Court is Defendants' motion for summary judgment (docket no. 11).

## II. PROCEDURAL BACKGROUND

On November 7, 2003, the Court issued an Order Dismissing Certain Claims With Leave to Amend (docket no. 3).  The Court found that Plaintiff's allegations, when liberally construed, stated cognizable Eighth Amendment claims against the Defendants in their individual capacities for malicious use of force.  The Court also determined Plaintiff stated cognizable state-law claims for assault and battery against Defendants, over which the Court exercised supplemental jurisdiction.  Plaintiff's § 1983 claims against Defendants in their official capacities, which is tantamount to asserting claims against the County of Santa Clara, were dismissed because Plaintiff did not allege facts that would give rise to liability on the part of the county.  After Plaintiff informed the Court that he did not intend to reassert the dismissed claims, the Court ordered service of the claims it previously found cognizable.

Defendants now move for summary judgment on the grounds that there are no material facts in dispute and that they are entitled to judgment as a matter of law.  Defendants also claim

that they are entitled to qualified immunity. Plaintiff did not file an opposition.[1]

## III. FACTUAL BACKGROUND

### A. Defendants' Allegations

In support of Defendants' motion for summary judgment, Defendants submitted declarations and documentary evidence alleging the following facts:

Officer David Campagna [hereinafter "Campagna"] was employed by DOC as a correctional officer on the date of the incident in question, October 15, 2002. Plaintiff was housed in module 7B of Main Jail North. Due to housing constraints, Plaintiff's cell was needed to fulfill the housing needs of other inmates. Campagna requested Plaintiff to "roll up his gear." (Aff. of David Campagna In Supp. of Defs.' Mot. for Summ. J. [hereinafter "Campagna Aff."] ¶4.) Plaintiff asked why and then said, "I ain't going, man." (Id.) Plaintiff then swung at Campagna with a closed fist, but missed. Campagna responded by punching Plaintiff in the face. Plaintiff threw a series of punches, after which Campagna attempted to take Plaintiff down to the floor to handcuff him. Plaintiff and Campagna fell on the floor where Plaintiff continued hitting Campagna. Campagna pushed Plaintiff off with his foot and kicked Plaintiff in the face with his other foot. At that point, Plaintiff got on top of Campagna and hit him several more times. Officer Alex Holguin [hereinafter "Holguin"] arrived at the scene of the altercation upon

---

[1] Plaintiff's opposition was due on January 7, 2005, sixty days after Defendants' motion for summary judgment was filed. Plaintiff made three requests for an extension of time. The first request for an extension of time, up to and including February 7, 2005, was granted. The second request for an extension of time, up to and including February 28, 2005, was granted as well. The third request for an extension of time was granted in part and denied in part. Plaintiff requested a sixty-day extension, but the Court only granted him a brief extension. Plaintiff had until March 21, 2005 to file his opposition, but to date no opposition has been filed with the Court. Furthermore, Plaintiff was advised pursuant to Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998) (en banc), that to prevent summary judgment in favor of Defendants, he "must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the [defendants'] declarations and documents and show that there is a genuine issue of material fact for trial." (May 4, 2004 Order at 2 (quoting Rand, 154 F.3d at 962-63)). The Court further warned Plaintiff: "If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you." (Id.)

2

investigating module 7B because Campagna was not responding to two radio transmissions.[2] According to Holguin, Plaintiff lunged at him as soon as he entered the cell and continued to fight with him until he was finally able to restrain Plaintiff in handcuffs.  (Aff. of Alex Holguin In Supp. of Defs.' Mot. for Summ. J. [hereinafter "Holguin Aff."] ¶2-¶3.)  Several more officers responded and assisted in restraining Plaintiff.  During this struggle, Campagna claims he accidentally stepped on Carrasco's upper torso or head area.  (Campagna Aff. ¶4.)

After the altercation, Campagna was transported to O'Connor Hospital for medical treatment.  Campagna did not work the rest of his shift on October 15, 2002.  Campagna's doctors concluded that he would not be able to return to his position as correctional officer due to the dislocated shoulder he suffered during the altercation.  (Id. ¶5.)

Holguin asserted that, after Plaintiff was restrained in handcuffs, he did not strike and did not observe any DOC staff strike Plaintiff or cause Plaintiff any further injury.  (Holguin Aff. ¶4.)  Holguin sustained injuries to his hand that also required treatment that evening at O'Connor Hospital.  (Id. ¶5.)

Plaintiff sustained a small fracture to his tooth and "other superficial injuries to his upper torso and face."  (Aff. of Cazmo Lukrich, M.D. In Supp. of Defs.' Mot. for Summ. J. [hereinafter "Lukrich Aff."] ¶4a; Defs.' Ex. G.)

**B.     Plaintiff's Allegations**

In his complaint, Plaintiff alleges that Campagna came into the module where Plaintiff was housed[3] and turned off both televisions and yelled, "yes I'm a 'punk,' a 'bitch' -- who ever [sic] was talking shit through the door, that's why your T.V.s [sic] are off!"  (Pl.'s Compl. at 3.)  Campagna then went upstairs to check on the welfare of the inmates and, as he walked by Plaintiff's door, Plaintiff asked Campagna to stop so that he could ask him a question.  Plaintiff proceeded to ask Campagna why the inmates "were always getting fucked for program" when

---

[2]  Campagna's radio fell when Plaintiff pushed him.  Therefore, Campagna could not radio for help.  (Supplemental Crime Report of Officer Herte In Supp. of Defs.' Mot. for Summ. J. [hereinafter "Herte Report"] at 4:30-5:11.)

[3]  Plaintiff claims that Campagna was assigned to work at module 7C and not at module 7B.

Campagna's team of Correctional Officers were working.[4] Campagna yelled, "who the fuck do you think your [sic] yelling at?!" (Id.) Plaintiff replied by stating, "[f]irst of all, I wasn't yelling at you but for coming at me like that -- fuck you!" (Id.) Campagna concluded the dialogue by shouting, "[a]ll right motherfucker, we'll see how bad your ass is when your [sic] out to program!" (Id.)

Campagna returned an hour later, opened Plaintiff's cell door (allegedly without following jail policy) and yelled at Plaintiff, "come on and cuff up." (Id.) Plaintiff asked where Campagna was going to take him. (Id. 3-3A.[5]) Campagna yelled, "I'm moving you behind the pillar!"[6] (Id. at 3A.) Plaintiff asked Campagna to rehouse him back at the old jail. (Id.) Plaintiff was fearful of being "cuffed up" by Campagna.[7] Campagna got into a fighting stance "with his hands saying [sic] 'Come on! Come on! You ready!?'" (Id.) Plaintiff asked Campagna to call his Sergeant, but he "started jumping up and down with his closed fist's [sic] saying 'Come on! Come on!'" (Id.) Campagna ran into Plaintiff's room, began punching Plaintiff in the face, and then exited the room back into the tier to push the panic alarm. Campagna then ran back into the room and started beating Plaintiff in the face with a closed fist. Fearing for his life, Plaintiff attempted to defend himself, but Campagna continued to beat him in the face. (Id.) The Main Jail Control Officer did not send any officers to Plaintiff's cell after the alarm was pushed, but instead called the Main Jail Control Center asking if everything was code 4.[8] At that time, Holguin walked up the stairs laughing, whistling and nonchalantly putting on his gloves,

---

[4] Program refers to the activities that inmates are allowed to do outside of their cells. (Herte Report at 5:1.)

[5] Plaintiff attached three handwritten pages to his Complaint, which were placed between pages 3 and 4, but were missing page numbers. Therefore, the Court has labeled these three pages, beginning with page number "3A" and ending with page number "3C".

[6] The record is unclear as to the meaning of "pillar" in this context.

[7] Plaintiff had heard that when Campagna cuffed up another inmate days prior to this, he broke the inmate's thumb and threatened to throw him over the tier.

[8] "To ask if an officer is 'Code 4' means to ask if that officer is all right, that is, if he is not in need of assistance." (Holguin Aff. ¶2.)

4

according to Plaintiff's witnesses. Holguin then ran into the room and started beating Plaintiff and yelling, "Get down!" (Id.) Plaintiff followed Holguin's orders and laid down on his stomach. Plaintiff's hands were handcuffed behind his back. Campagna kicked Plaintiff four times on the right side of his face. Plaintiff yelled to his neighbor indicating that Campagna was kicking him in the face. During this time, Holguin also punched Plaintiff and squeezed his penis "horribly hard causing blood to come out a week later." (Id. at 3B.) Defendants continued to kick Plaintiff in the back and chest. Other officers ran in the room and started punching Plaintiff in the back and yelling, "mmmhh -- you fucking punk!" (Id.) Plaintiff then heard an officer yell, "Stop! The Sgts. [sic] coming." (Id.) Plaintiff was then removed to a safety cell.

Plaintiff alleges his tooth was broken and that his cheek was smashed into the concrete, causing severe facial damage and bleeding in the ear. Plaintiff claims he was not given any medical attention for the injuries sustained during this incident. He adds that he was never examined by a nurse. In fact, Plaintiff was in trial during this incident, and the court issued an order directing Main Jail medical personnel to treat his injuries, but none was provided. Furthermore, the trial was postponed due to Plaintiff's severe facial injuries. Plaintiff's counsel took photographs of the injuries Plaintiff sustained.

## IV. LEGAL STANDARD FOR SUMMARY JUDGMENT

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (a fact is material if it might affect the outcome of the suit under governing law, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Generally, as is the situation with Defendants' challenge to Plaintiff's constitutional claims, the moving party bears the initial burden of identifying those portions of the record which

demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (citations omitted).

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge).

The district court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. See id. at 631.

It is not the task of the district court to scour the record in search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. Id. If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. See id.; see, e.g., Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1028-29 (9th Cir. 2001) (even if there is evidence in the court file which creates a genuine issue of material fact, a district court may grant summary judgment if the opposing papers do not include or conveniently refer to that evidence). Although the district court has discretion to consider materials in the court file not referenced in the opposing papers, it need not do so. Id. at 1029. "The district court need not examine the entire file for evidence establishing a genuine issue of fact." Id. at 1031.

## V.  DISCUSSION

### A.  Excessive Force Claim

Plaintiff's suit is based on a claim of excessive force in violation of the Eighth Amendment.

"[W]henever prison officials stand accused of using excessive force in violation of the Eighth Amendment, the deliberate indifference standard is inappropriate." Hudson v. McMillian, 503 U.S. 1, 6 (1992).  Instead, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.  See id. at 6-7; see also Whitley v. Albers, 475 U.S. 312, 320-21 (1986); Jeffers v. Gomez, 267 F.3d 895, 912-13 (9th Cir. 2001) (applying "malicious and sadistic" standard to claim that prison guards used excessive force when attempting to quell a prison riot, but applying "deliberate indifference" standard to claim that guards failed to act on rumors of violence to prevent the riot).

A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, Farmer v. Brennan, 511 U.S. 824, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, i.e., the offending conduct was wanton.  Id. (citing Wilson, 501 U.S. at 297); LeMaire v. Maass, 12 F.3d 1444, 1451 (9th Cir. 1993).

The U.S. Supreme Court has determined the standard for analyzing an excessive force claim.  See Hudson, 503 U.S. at 4-5.  While the extent of injury suffered by an inmate is one of the factors to be considered in determining whether the use of force is wanton and unnecessary, the absence of serious injury does not end the Eighth Amendment inquiry.  Id. at 7.  Whether the alleged wrongdoing is objectively "harmful enough" to establish a constitutional violation is contextual and responsive to contemporary standards of decency.  Id. at 8 (citing Estelle v. Gamble, 429 U.S. 97, 103 (1976)).  Such standards are always violated when prison officials maliciously and sadistically use force to cause harm whether or not significant injury is evident.  Id.  That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action; the Eighth Amendment's prohibition of cruel and unusual punishment necessarily

excludes from constitutional recognition de minimis uses of physical force. See Hudson, 503 U.S. at 9-10 (blows directed at inmate which caused bruises, swelling, loosened teeth, and cracked dental plate were not de minimis).

There is a split in the circuits on whether a prisoner must prove that he suffered more than a de minimis injury in order to prevail on an excessive force claim. Compare Brooks v. Kyler, 204 F.3d 102, 108 (3d Cir. 2000) ("[A]bsence of objective proof of non-de minimis injury does not alone warrant dismissal.") and Moore v. Holbrook, 2 F.3d 697, 700 (6th Cir. 1993) ("No actual injury needs to be proven to state a viable Eighth Amendment claim.") with Gomez v. Chandler, 163 F.3d 921, 924 (5th Cir. 1999) (to support an Eighth Amendment excessive force claim a prisoner must have suffered from the excessive force a more than de minimis injury) and Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994) (en banc) (plaintiff must show more than de minimis injury), cert. denied, 513 U.S. 1114 (1995).[9] Although the Ninth Circuit has not addressed the issue, it has strongly suggested that a prisoner need only prove that the use of physical force was more than de minimis. See Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (clarifying that in embracing the physical injury standard under 28 U.S.C. § 1997e(e) adopted by several circuits, the Ninth Circuit does not subscribe to the reasoning of some of those circuits that Eighth Amendment claims require that "the injury must be more than de minimis;" the standard used for Eighth Amendment excessive force claims only examines whether the use of physical force is more than de minimis).

As evident in the "Factual Background" section,[10] the parties' versions of the incident differ markedly. Plaintiff has supplied his verified complaint, which functions as an affidavit in support of his claims and may be considered as evidence in evaluating Defendants' motion for

---

[9] See also Warren v. Westchester County Jail, 106 F. Supp. 2d 559, 568-69 (S.D.N.Y. 2000) (finding that a de minimis injury weighs heavily towards the conclusion that the degree of force used was de minimis and thus not actionable under Hudson).

[10] See supra Part III.

8

summary judgment. See Schoroeder, 55 F.3d at 460.[11] An affidavit is "cognizable to establish a genuine issue of material fact so long as [it] state[s] facts based on personal knowledge and is not too conclusory." Rodriguez v. Airborne Express, 265 F.3d 890, 902 (9th Cir. 2001). In his verified complaint, Plaintiff's sets forth specific allegations regarding the conduct of Defendants and, thus, creates a genuine issue of material fact that the alleged force was applied maliciously and sadistically to cause harm. See Hudson, 503 U.S. at 6-7. According to Plaintiff, after he was handcuffed and laying on the floor, both Defendants continued to physically abuse him. Plaintiff's version of being beaten while offering no resistance and later while handcuffed would lead to a conclusion that the force used was excessive. Meanwhile, if believed, Defendants' description of using the force necessary to subdue a resisting inmate and their claim that Plaintiff was never struck after he was handcuffed, would lead to a conclusion that the force used was not excessive. Based on Plaintiff's allegations, the Court would have to find that Defendants' conduct was not applied in a good-faith effort to restore discipline, but instead maliciously and sadistically to cause harm; thus, it does amount to an unconstitutional use of unreasonable force. But summary judgment is not the place for credibility determinations. The Court will not be able to grant judgment in Defendants' favor without accepting Defendants' version and disbelieving Plaintiff's version of the events that transpired. A trier of fact must hear both versions and decide whom to believe. Plaintiff has established a "'genuine issue for trial'" concerning the excessiveness of the force used on him on October 15, 2002. Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

Defendants argue that relief is barred because the use of force and Plaintiff's injuries were de minimis. Although the Eight Amendment excludes from constitutional recognition de minimis use of force, if the force is of the kind repugnant to mankind, it will be deemed

---

[11] Plaintiff's verified complaint can be treated as his opposing affidavit because he stated under penalty of perjury that its contents were true and correct, and the allegations were not based purely on his belief but on his personal knowledge. See Schroeder, 55 F.3d at 460 & nn.10-11. Plaintiff never filed an amended complaint after the Court dismissed certain claims with leave to amend. Therefore, for the purposes of this Order, the Court will refer to Plaintiff's original complaint filed on October 21, 2003 as his "verified complaint."

9

excessive. Hudson, 503 U.S. at 9-10. Defendants support their argument that use of force was de minimis by indicating that Plaintiff suffered de minimis injury, however, the absence of serious injury does not end the Eighth Amendment inquiry. Id. at 7. Nevertheless, the record shows that Plaintiff sustained a small fracture to his tooth and "other superficial injuries to his upper torso and face." (Lukrich Aff. ¶4a; Defs.' Ex. G.) Plaintiff's description of his injuries contradicts Defendants' evidence. Plaintiff specifically identified injuries stemming from the alleged excessive use of force by Defendants during the incident on October 15, 2002. He claims his tooth was broken and that he suffered "severe facial damage," "bleeding in the ear" and that "[his] penise [sic] was squeezed horribly hard causing blood to come out a week later." Pl.'s Compl. at 3B. Plaintiff indicates that he was being tried in another case when the beating occurred but because he sustained "severe facial injuries" during the altercation, the trial was postponed. (Pl.'s Compl. at 3C.) Therefore, the record strongly suggests that Defendants' use of physical force was "more than de minimis" and is actionable under the Eighth Amendment. See Oliver, 289 F.3d at 628.

Accordingly, the Defendants' motion for summary judgment with respect to the use of force is DENIED.[12]

### B.   Qualified Immunity

Given the facts presented to the Court, Defendants have raised qualified immunity as an affirmative defense.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The rule of qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Saucier v. Katz, 533 U.S. 194, 202 (2001) (internal quotation marks and citation omitted). In excessive force cases, where qualified immunity operates to protect officers from the sometimes "hazy border between

---

[12] For the same reasons, Defendants' motion for summary judgment is DENIED as to the state-law claims of assault and battery, which are based on the same disputed facts.

excessive and acceptable force," id. at 206 (internal quotation marks and citation omitted), it can apply in the event that the officer had a mistaken but reasonable belief about what the law allowed in the situation, id. at 207-08.

A court considering a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right. Wilson v. Layne, 526 U.S. 603 (1999); Conn v. Gabbert, 526 U.S. 286, 290 (1999). Upon determining that Plaintiff's complaint, taken as true, sets forth a cognizable claim for excessive force under the Eighth Amendment,[13] the next sequential step is to ask whether the right was clearly established. Saucier, 533 U.S. at 201. The relevant, dispositive inquiry in determining whether a right was clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Id. at 202. If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate. Id. The plaintiff bears the burden of proving the existence of a "clearly established" right at the time of the allegedly impermissible conduct. Maraziti v. First Interstate Bank, 953 F.2d 520, 523 (9th Cir. 1992). It is not necessary that a prior decision rule "the very action in question" unlawful for a right to be clearly established. Anderson v. Creighton, 483 U.S. 635, 640 (1987).

If believed by a trier of fact, Plaintiff's account of the incident establishes that Plaintiff's Eighth Amendment rights were violated when Defendants physically abused him while he was handcuffed. Plaintiff accuses Defendants of punching and kicking him while he had his hands handcuffed behind his back, causing him to break a tooth and sustain severe facial injuries. According to the U.S. Supreme Court's disposition in Hudson, it was clearly established at the time of this incident that this type of conduct is unlawful. 503 U.S. at 4-5. In Hudson, the plaintiff argued with a prison guard and as a result, the guard placed the plaintiff in handcuffs and walked him toward the penitentiary's administrative lockdown area. Id. at 4. The plaintiff testified that on the way, the guard punched him in the mouth, eyes, chest, and stomach while another guard held him in place then kicked and punched him from behind. Id. The altercation

---

[13] See discussion supra Part V.A.

loosened plaintiff's teeth and cracked his partial dental plate. Id. He suffered minor bruises and swelling of his face, mouth, and lip. Id. The Supreme Court upheld the appellate court's finding that the guards' use of force was objectively unreasonable because no force was required. Id. at 5. Moreover, their conduct qualified as clearly excessive and occasioned unnecessary and wanton infliction of pain. Id.

In the instant case, Plaintiff claims that while he was handcuffed, Defendants punched and kicked him with enough force to break one of his teeth and result in injuries to his face and torso. As indicated above, "taken in the light most favorable to the party asserting the injury . . . the facts alleged show the Defendants' conduct violated a constitutional right." Saucier, 533 U.S. at 201 (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). The facts set forth in Hudson demonstrate that the standard for excessive force was clearly established. Accordingly, Defendants were, or should have been, on notice of the excessive force standard.

If the law is determined to be clearly established, the next question is whether, under that law, a reasonable officer could have believed his conduct was lawful. Act Up!/Portland v. Bagley, 988 F.2d 868, 871-72 (9th Cir. 1993). Defendants bear the burden of establishing that their actions were reasonable, even if they violated Plaintiff's constitutional rights. See Doe v. Petaluma City School Dist., 54 F.3d 1447, 1450 (9th Cir. 1995); Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995). Defendants must show that a reasonable officer could have believed that their conduct was lawful. Whether a reasonable official could have believed the action taken was lawful is a mixed question of law and fact:

> It involves an objective test of whether a reasonable official could have believed that his conduct was lawful in light of what he knew and the action he took. If there are genuine issues of material fact in issue relating to the historical facts of what the official knew or what he did, it is clear that these are questions of fact for the jury to determine.

Sinaloa Lake Owners Ass'n v. City of Simi Valley, 70 F.3d 1095, 1099 (9th Cir. 1995). The defendant's good faith and subjective beliefs about the legality of his or her conduct are irrelevant. Alford v. Haner, 333 F.3d 972, 978-79 (9th Cir. 2003). A guard can do an act which would violate an inmate's Eighth Amendment right but still be entitled to qualified immunity if a reasonable officer in his position would have believed that his response was a good faith effort to

restore discipline.  Marquez v. Gutierrez, 322 F.3d 689, 692-93 (9th Cir. 2003).  When conducting the analysis, the court is obligated to accept Plaintiff's facts as true.  See Martin v. City of Oceanside, 360 F.3d 1078, 1082 (9th Cir. 2004).

In the instant case, a reasonable officer facing the situation as described by Plaintiff would not believe that Defendants' response was a good faith effort to restore discipline.  Plaintiff asserts that he was beaten while he lay handcuffed on the floor.  (Pl.'s Compl. at 3B.)  Defendants' alleged actions of kicking and punching Plaintiff when he was already handcuffed went beyond a good faith effort to restore discipline.  See Watts v. McKinney, 394 F.3d 710, 712-13 (9th Cir. 2005) (finding that prison guard could not reasonably believe that he could lawfully kick the genitals of a prisoner who was on the ground and in handcuffs).  Because a reasonable officer could not have believed the action taken was lawful based on Plaintiff's version of the relevant events, Defendants cannot establish their entitlement to summary judgment based on qualified immunity.

The Court further finds that, insofar as the parties' version of the underlying historical facts are disputed, genuine issues of material fact exist which preclude a finding that Defendants' conduct was objectively reasonable.  For example, using the same facts outlined above, a determination of the reasonableness of Defendants' conduct would vary depending upon whether the facts show that Plaintiff was handcuffed prior to the altercation, whether Plaintiff's attempts at resistance led to him initiating and prolonging a fight with Defendants, and whether Defendants could have subdued Plaintiff without injuring Plaintiff's face or upper torso during the struggle.

Accordingly, qualified immunity is DENIED as to Defendants in this action.

### VI.  CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Defendants' motion for summary judgment (docket no. 11) is DENIED.

2. This case has been pending for close to two years and the events at issue occurred almost three years ago.  If the case must go to trial even further delay in resolution will be incurred, as will expenses.  A record already exists which includes evidence of internal

1  investigations and detailed medical records of the injuries suffered.  Having considered all of
2  these factors, the Court finds that it is in the best interests of the parties and judicial efficiency to
3  REFER this action to a Magistrate Judge for court-ordered settlement proceedings.  The Clerk of
4  the Court shall prepare and send to the parties with this Order a separate notice of referral.

   IT IS SO ORDERED

Dated: August 29, 2005

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge